# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

FRANK STARLING,                                                                                   PETITIONER
ADC #158536

v.                                    5:16CV00180-JM-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

    2.     Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.     The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.   BACKGROUND**

On August 20, 2014, a Miller County jury convicted Petitioner, Frank Starling, of first degree murder and a terroristic act. (Doc. No. 3 at 6-7.) Each charge was accompanied by a firearms enhancement, and resulted in an aggregate sentence of 110 years' imprisonment. (*Id.*) Mr. Starling appealed his conviction, arguing the state did not prove the "conscious object" element of the crimes. *Starling v. State*, 2015 Ark. App. 429 *1. The Arkansas Court of Appeals affirmed, reciting the underlying facts of the case as follows:

> On April 18, 2013, Demetria Satterwhite contacted Starling to let him know that Billy Hawkins, or "Wild Bill" as he was known, was interested in buying crack cocaine from him. Starling told Satterwhite it would cost $1000. Hawkins, in turn, planned to sell the drugs to "his home boys" from Ashdown. Satterwhite drove Starling, Hawkins, and Aundrey Battle to a local McDonald's where Satterwhite saw her cousin, Andrew "P.J." Cheatham III. Satterwhite got out of the car and went over to P.J.'s car, and Hawkins followed her. Hawkins, who had possession of Starling's crack cocaine, got in P.J.'s car, and they drove off together. Starling became irate when Hawkins left with the drugs without paying for them. Satterwhite testified that Starling threatened her and her children because he believed she was part of the plot to steal the drugs. According to Satterwhite, Starling forced her to drive around town looking for P.J. and Hawkins. Over the course of trying to find P.J. and Hawkins, more people joined in the hunt. Satterwhite drove Starling past the home of Brittany Baker, P.J.'s girlfriend, where she noticed a gold Toyota parked outside. Satterwhite, Starling, and the others stopped for gas at a local convenience store, where Satterwhite said she saw the gold Toyota again. Satterwhite testified that she later found out that Starling's brother, Serandan, was in the gold Toyota. At the

2

> convenience store, someone spotted P.J.'s car, so Satterwhite and the driver of the gold Toyota started following P.J.'s car. They blocked off his car on a side street, and Serandan Starling and Aundrey Battle jumped out of their cars and started shooting at P.J.'s vehicle. One of the bullets struck P.J. in the forehead, killing him. Everyone fled the scene and buried their weapons. Frank Starling and Battle later burned the clothes they were wearing at the time of the murder.

*Starling v. State*, 2015 Ark. App. 429 at *2. The Arkansas Court of Appeals also stated:

> Evidence was offered to establish that Starling was infuriated because Hawkins left in P.J.'s car with the drugs and without paying for them. Testimony also indicated that Starling rounded up his brother and many other family members and acquaintances to go hunt for Hawkins and P.J. Evidence was presented that Starling threatened to kill the victim once he found him. Battle testified that Starling was extremely mad, stating, "I want my shit back, or my money." Battle said the group, including Starling who held a gun on his lap the entire time, drove around trying to find P.J. Once they located P.J. and blocked his car in, Battle took Frank Starling's loaded gun because Batde (sic) believed that Frank was going to "do somethin' bad to the dude or somethin'."
>
> While it was Starling's brother, Serandan, who actually fired the shot that killed P.J., there was sufficient evidence for the jury to convict Frank Starling. He was not merely present at the murder scene; he encouraged it and gathered all the players together to commit the crime.

*Starling v. State*, 2015 Ark. App. 429 at *5.

Mr. Starling next filed a Rule 37 petition with the Miller County Circuit Court (Doc. No. 3 at 9), which was denied because Mr. Starling only made conclusory allegations that were not supported by any facts. (*Id.* at 17.) Although Mr. Starling filed a timely notice of appeal, he failed to lodge the record within the requisite ninety-day period. (Doc. No. 12.) On June 10, 2016, Mr. Starling filed the current Petition for Writ of Habeas Corpus, arguing: (1) actual innocence; (2) ineffective assistance of counsel; (3) double jeopardy and denial of a fair trial; and (4) he was not appointed counsel for his Rule 37 petition. (Doc. No. 2.) Respondent contends Mr. Starling's Petition is procedurally defaulted. For the following reasons, I agree.

3

**II.   ANALYSIS**

    **A.   Ineffective Assistance of Counsel**

After the trial court denied his Rule 37 petition, Mr. Starling filed a notice of appeal. (Doc. No. 10 at 34.) However, he failed to properly tender the record to the Arkansas Supreme Court. Therefore, the Arkansas Supreme Court was never given the opportunity to address the constitutional errors alleged in Mr. Starling's petition.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); See 28 U.S.C. § 2254(b) (stating a state prisoner must exhaust available state court remedies before raising a claim in a federal habeas corpus proceeding). As a matter of comity and federalism, the state courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This requirement is in place to afford the state the opportunity to correct any constitutional errors before the federal courts intervene. *Lenza v. Wyrick*, 665 F.2d 804, 807-8 (8th Cir. 1981); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("We have consistently adhered to this federal policy for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.") (citations omitted). Failure to do so will result in a procedural default. *Kennedy v. Delo,* 959 F.2d 112, 115 (8th Cir. 1992) (citing *Coleman,* 501 U.S. 722 at 749-50).

Although Mr. Starling concedes he did not perfect his Rule 37 appeal (Doc. No. 2 at 3), he argues his claims of actual innocence and lack of counsel at the initial collateral proceeding excuse the default. (Doc. No. 10 at 6.) However, the State of Arkansas does not provide an absolute right to effective counsel in post-conviction proceedings. *See Viveros v. State*, 372 Ark. 463 (2008); *Biggs*

*v. State*, 2014 Ark. 114 (2014). And lack of Rule 37 counsel does not excuse his procedural default.

There are only two situations where federal district courts may review procedurally defaulted petitions. If the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As previously stated, Mr. Starling's claim that lack of counsel is the cause for default is insufficient.

Moreover, Mr. Starling cannot satisfy the test of the miscarriage-of-justice exception. Few petitioners are "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 315 (1995). "[T]he miscarriage of justice exception requires prisoners to present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" *Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010) (quoting *Schulp v. Delo*, 513 U.S. at 316 (1995)). Mr. Starling's claims do not qualify in either of these exceptions, and as such, should be dismissed as procedurally defaulted.

**B.     Actual Innocence**

Mr. Starling uses the claim that he is actually innocent as his first ground of habeas relief, but as Respondent correctly asserts, actual innocence is not a ground for habeas relief.[1] But giving Petitioner all benefit of the doubt, I will construe his claim of actual innocence as an excuse for his procedural default. The United States Supreme Court made it clear in *McQuiggin v. Perkins* that a claim of actual innocence acts "as a gateway to adjudication of a federal habeas petition on the

---

[1] *See Herrera v. Collins*, 506 U.S. 390, 400 (1993).

merits." 569 U.S. __, 133 S. Ct. 1924, 1936 (2013). However, to establish a claim of actual innocence, the petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). Furthermore, Mr. Starling must establish (1) new and reliable evidence that was not presented to the state courts, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him. *See Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). Evidence is "new" if it was not available at the time of trial through the exercise of due diligence. *Nooner v. Hobbs*, 689 F.3d 921, 934 (8th Cir. 2012).

In Mr. Starling's claim of actual innocence, he argues that because he was not the shooter, he should not have been found guilty of first degree murder. (Doc. No. 2 at 4.) He states he reported to his brother that someone stole his "personal property," and his brother "call[ed] for the action." (*Id.*) Mr. Starling claims he had no intention "to catch and kill anyone at all!" (*Id.*) However, this evidence is not new. In fact, it was presented to the jury and the jury convicted him.

Even if I consider Petitioner's argument as an excuse for his procedure default, Mr. Starling is not entitled to relief. Without new evidence, Mr. Starling's procedural default cannot be excused.

    **C.**    ***Martinez v. Ryan*, 566 U.S. __, 132 S.Ct. 1309 (2012).**

Mr. Starling argues the Supreme Court's holding in *Martinez v. Ryan* should excuse his procedural default because his claims of ineffective assistance of counsel are substantial. 566 U.S. __, 132 S.Ct. 1309 (2012). (Doc. No. 10.) If I assumed *Martinez* applied, I would perform a merits review of the defaulted claims if: (1) the claim of ineffective assistance was substantial; (2) the "cause" was that Mr. Starling had no counsel in the post-conviction proceeding; (3) the Rule 37 proceeding was the initial review proceeding with respect to the ineffective assistance of counsel claim; and (4) it was highly unlikely that Mr. Starling had a "meaningful opportunity" to raise his

ineffective assistance claims on direct appeal. *Trevino v. Thaler*, 569 U.S. __, 133 S.Ct. 1911 (2013). Contrary to his belief, Mr. Starling's claim fails on the first prong of the analysis. His argument, that his attorney was ineffective for not raising the defense that he did not "ride in the car where shots were fired from . . .," does not reach the level of "substantial."

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Mr. Starling's claims are clearly procedurally defaulted. Therefore, no certificate of appealability should be issued.

### IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice, and the requested relief be DENIED; and

2.    A certificate of appealability should not be issued.

DATED this day 29th of November, 2016

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE